LABOR RELATIONS BOARD, Petitioner *v.* SIMMONS
INTERNATIONAL, LTD., Respondent.

No. 38. Argued May 11, 1955.—Decided June 7, 1955.

*José Trías Monge, Attorney General, Aurelio Torres Braschi, Assistant Attorney General, Ramón Acevedo Oliveras* and *Eduardo Álvarez de la Vega,* for petitioner. *Luis E. Dubón, R. García Cintrón, Luis Ríos Algarín* and *Jaime Pieras Jr.* for respondent.

PER CURIAM.

Pursuant to the provisions of § 9 (2) (a) of Act No. 130 of May 8, 1945 (Sess. Laws, p. 406), as amended by Act No. 6 of March 7, 1946 (Sess. Laws, pp. 18, 38), the Labor Relations Board of Puerto Rico [1] filed a petition in this Court requesting us to enforce its order of February 27, 1953. That order was entered as a result of the complaint filed against Simmons International, Ltd. by Local No. 423 of the Upholsterer's International Union of North America, A.F.L., alleging that the respondent, through its agents, officers, and other supervisory personnel, in or late in October, 1950 and thereafter, violated and continues to violate the conditions of the collective agreement entered into with the Local in failing to comply with the clause providing for the vacations of its employees. An order having been entered by this Court directing the respondent to show cause, within a period of ten days, why the decree sought should not be issued, the latter (the respondent) appeared in the proceeding and raised the questions of law which we proceed to discuss:

I

Respondent maintains that this Court lacks jurisdiction to enforce the order entered by petitioner, alleging that it is covered by the National Labor Relations Act, [2] as

---

[1] Hereafter we shall refer to the Labor Relations Board of Puerto Rico indistinctly as "the petitioner" or as the "Insular Board."

[2] We shall hereafter refer to the National Labor Relations Act merely as the "National Act."

amended by the Labor Management Relations Act (Taft Hartley Act), 29 U.S.C.A., § 151 *et seq.*, and that the Act confers exclusive jurisdiction on the National Labor Relations Board to take cognizance of cases involving unfair practices. We do not agree. There is no question that the respondent is covered by the Federal Act. Petitioner so admits. Still, that Act merely confers exclusive jurisdiction upon the National Board in cases of the unfair practices therein enumerated. See § § 8(*a*) and 8(*b*) of the Act. The instant case charges the respondent with a violation of a collective agreement, which is an unfair labor practice under § 8(1)(*f*) of Act No. 130 of 1945, *supra.*[3] Such unfair practice is not covered by the National Act. Therefore, the latter does not conflict with the local Act. This Court has expressly held that the Insular Board has jurisdiction over cases involving unfair practices for violation of a collective bargaining agreement, even if the industry involved is covered by the National Act. *Labor Rel. Board* v. *I.L.A.*, 73 P.R.R. 568; *Labor Rel. Board* v. *Quiñones (per curiam)*, decided November 12, 1954; * cf. *Labor Rel. Board* v. *N. Y. & P.R.S/S Co.*, 69 P.R.R. 730. The fact that the Labor Management Relations Act (Taft-Hartley Act) of 1947 by § 301(*a*) (29 U.S.C.A. § 185(*a*)) vests the federal courts with jurisdiction to take cognizance of actions involving violations of collective bargaining agreements, does not bar the application of local regulations on this matter to industries covered by the Act. *Labor Rel. Board* v. *I.L.A.*, *supra.*

---

[3] Section 8(1)(*f*) of Act No. 130 of 1945, as amended by Act No. 6 of March 7, 1946, provides essentially the following:

"It shall be an unfair labor practice for an employer acting individually or in concert with others:

". . . . . . . .

"(*f*) To violate the terms of a collective bargaining contract . . ."

* Not published.

## II

 Nor do we agree with respondent in its contention that petitioner was without jurisdiction to intervene in the case at bar, since the petition filed in this Court involved a dispute on the terms of a collective bargaining agreement and because the agreement contained an "arbitration proceeding" for settling disputes which was not used here. Respondent Simmons International, Ltd. appeared at the hearing before the official examiner, and at no time asserted its right under the collective bargaining agreement to settle the matter by arbitration. Hence, we believe that the respondent waived any right which it might have in that respect. This being so, it could not assert such right in the proceeding for review before the Insular Board, or raise it at this time before this Court. Undergraft & McCoy, *Arbitration of Labor Disputes*, § 8, p. 71; *Coal & Oil Co.*, 30 L.R.R.M. 1407.

## III

 Respondent further contends that it was not engaged in the unfair practice imputed to it, alleging that the collective bargaining agreement allegedly violated is void as contrary to the Federal Government's public policy set forth in the National Act. Respondent's contention is grounded on the fact that the collective bargaining agreement in question contained a union-shop clause which is illegal under § 8 (a) (3) of the National Act, since the election required by § 9 (e) (1) of the Act was not held. These sections, as they stood before the 1951 amendment,[4] read as follows:

"Sec. 8. (a) It shall be an unfair labor practice for an employer—

" . . . . . . . .

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage

---

[4] Act No. 189 of October 22, 1951, 82d Congress, 1st session.

or discourage membership in any labor organization: *Provided,* That nothing in this Act, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in section 8 (*a*) of this Act as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the bargaining of such employment or the effective date of such agreement, whichever is the later, (*i*) if such labor organization is the representative of the employees as provided in section 9 (*a*), in the appropriate collective-bargaining unit covered by such agreement when made; and (*ii*) *if, following the most recent election held as provided in section 9 (e) the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to authorize such labor organization to make such an agreement: Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) . . . . . (B) . . ." (Italics ours.)

"(9) (*e*) (1) Upon the filing with the Board by a labor organization, which is the representative of employees as provided in section 9 (*a*), of a petition alleging that 30 per centum or more of the employees within a unit claimed to be appropriate for such purposes desire to authorize such labor organization to make an agreement with the employer of such employees requiring membership in such labor organization as a condition of employment in such unit, upon an appropriate showing thereof the Board shall, if no question of representation exists, take a secret ballot of such employees, and shall certify the results thereof to such labor organization and to the employer."

Union-shop agreements are prohibited in principle by § 8(*a*) (3) of the National Act and are permitted by way of exception only subject to the conditions specified therein. Prior to October 22, 1951 (effective date of the amendment of §§ 8 (*a*) (3) and 9 (*e*) (1) of the National Act) as well as on the date of signing the collective bargaining agreement in the case at bar,[5] the union-shop election was necessary to

---

[5] The collective bargaining agreement involved in this case was signed on September 29, 1949, with retroactive effect to January 1 of that year.

make the union-shop agreement valid. 173 A.L.R. 1401, 1415 (§ 21) ; 2 Labor Law Reporter, 4th ed., § 4530, p. 4743.

There is no question that in the instant case the election requirement was not met. This is admitted by petitioner. Still, respondent is wrong in maintaining that it is relieved on this score from all liability, notwithstanding the violation of other valid conditions of the collective bargaining agreement. In diverse cases the National Board has ordered the employer to cease giving effect in their entirety to collective bargaining agreements containing unlawful provisions. See *Pacific Telephone and Telegraph Co.*, 76 N.L.R.B. 889; *Salant & Salant, Inc.*, 88 N.L.R.B. 816; *Julius Resnick, Inc.*, 86 N.L.R.B. 38; *Julian Freirich Co.*, 86 N.L.R.B. 542; 2 *Labor Law Reporter*, 4th ed., § 4535, p. 4752. However, everything seems to point to the fact that after the enactment of the 1951 amendments to § § 8(a)(3) and 9(e)(1), *supra*, deleting in its entirety the election requirement, the National Board would not invalidate the entire collective bargaining agreement in a case such as this. See *Southland Paper Mills, Inc.*, 97 N.L.R.B. 896; *Davis Motor Co., Inc.*, 97 N.L.R.B. 125. We therefore conclude that we ought not to hold that the agreement involved here is void in its entirety.

■ Still, even if the preceding assertion were mistaken we hold that respondent's contention under discussion is not correct in the light of the holding in *National Labor Relations Board* v. *Rockaway News Supply Co.*, 345 U. S. 71, in which it is said at p. 76:

"There are two obstacles in the way of the Board's complete disregard of this contract. The first is that, even if inclusion of a forbidden provision is enough to justify the Board in setting it aside as to the future, it does not follow that it can be wholly ignored in judging events that occurred before it was set aside. It is one thing for the Board to say that the parties should not go on under such a contract; it is another to say that no effect whatever may be given to a contract negotiated in good faith by the union and the employer

which both believed to be valid and operative, to which both were conforming their conduct, and which no authority had yet held void."

In view of the foregoing, we hold that the existence of an unlawful provision does not render the collective bargaining agreement void *ab initio* but merely voidable, and, since there is no evidence in the record that it was invalidated by a competent authority, we hold that respondent is bound to comply with the valid provisions contained therein and also that it cannot allege the nullity of the agreement as a defense in this proceeding.

It is well to indicate that no conflict could arise between the order of the Board of February 27, 1953, in the sense that respondent must comply with any collective bargaining agreement "signed with Local No. 423 of the Upholsterer's International Union of North America, A.F.L.," and any order which might be entered by the National Board invalidating in whole or in part the collective bargaining agreement involved in this case, since by its own terms the agreement expired in 1950.

## IV

Respondent further urges that the order of the Insular Board should not be enforced, since the record does not contain sufficient facts to show that Simmons International, Ltd. is an employer under § 2(2) of the Labor Relations Act of Puerto Rico (Act No. 130 of 1945, amended in 1946), or that Local No. 423 is a labor organization under the provisions of § 2(10) of the Act. Again we disagree. It appears from the transcript of the evidence sent up in this case that the manager of Simmons International, Ltd. testified that it employed 38 workers in a mattress and metal-bed factory, and that it was a corporation duly registered in the Office of the Executive Secretary of Puerto Rico. It cannot be gainsaid that this is sufficient to establish that the respondent is an employer, in view of the defini-

tion of this term contained in § 2 (2) of our Labor Relations Act, which reads:

"The term 'employer' shall include executives, supervisors and any person who carries on activities of an executive nature directly or indirectly in the interest of an employer, but shall not include, (except for corporate instrumentalities of the Government of Puerto Rico as hereinafter defined) the Government or any political subdivision of the same; *Provided,* That it shall also include any individual, association or organization intervening in behalf of the employer in any labor dispute or collective bargaining."

The evidence before the official examiner, on which the order of the Insular Board was based, clearly establishes also that the union made an agreement with respondent whereby the former would admit in its membership employees of the latter. It is therefore clear that the union is a labor organization, as this term is defined in § 2 (10) of the Insular Labor Relations Act, to wit:

"The term 'labor organization' means any kind of organization, or any agency or committee representing employees or any group of employees acting in concert, or any plan in which employees participate, which exists for the purpose in whole or in part of dealing with an employer concerning grievances, disputes, wages, rates of pay, hours of work and/or conditions of labor."

Respondent further contends that the order of the Board should not be enforced because no evidence was offered to establish that the union had complied with all the provisions of the National Act. We need not consider this contention, since this point is not argued in respondent's brief. *De Jesús* v. *Assad,* 63 P.R.R. 131, 134; *Heirs of González* v. *Federal Land Bank,* 51 P.R.R. 454, 456.

V

The collective bargaining agreement in force between Simmons International, Ltd. and Local No. 423 provides in article XIV, § 1, as follows:

"This agreement shall be effective as of January 1, 1949, and shall remain in force until December 31, 1949; provided, that as of October 1, 1949, and thereafter the clauses bearing on the wage rate per hour, vacation and sick leave shall be governed by the provisions of Mandatory Decree No. 16 of the Minimum Wage Board of the Department of Labor."

In view of the above, the Insular Board held that respondent's employees had the right in 1950 to the vacation and sick leave provided in Mandatory Decree No. 16 of the Minimum Wage Board.[6]

The respondent contends that the Insular Board erred in so concluding. In support of its contention it alleges that the decree in question does not cover its industry and that, notwithstanding this fact, it was not the intention of the parties to consider that decree as applicable to the respondent. We do not agree. Conceding, for the sake of argument, that the decree does not cover respondent's industry, by operation of the collective bargaining agreement itself entered into by the parties the provisions of the decree bearing on pay rate per hour, vacation, and sick leave were applicable to the employees covered by the decree as of October 1, 1949. In this respect the conditions of the agreement are clear. It must be presumed that it was the intention of the parties to insure that the provisions of Decree No. 16 be applied to them, irrespective of the terms of the decree

---

[6] Mandatory Decree No. 16, fixing minimum wages, maximum working hours, and other working conditions for wholesale-trade employees, provides in the pertinent part of article V, paragraphs B and C, as follows:

"B—*Vacation.*—Every employee shall be entitled to vacation with pay in advance at the rate of one and one-fourth (1-¼) days for every month in which he has had at least one hundred twenty (120) hours of work. Vacation shall be granted annually in such a manner as not to interrupt unnecessarily the proper operation of the business, to which end the employer shall prepare in advance a vacation schedule . . .

"C—*Sick Leave.*—Every employee shall be entitled to sick leave with pay at the rate of one and one-fourth (1-¼) days for every month in which he has had at least one hundred twenty (120) hours of work. Sick leave shall accrue during the course of a year but not from one year to another."

itself. To hold otherwise would be tantamount to concluding that the intention of the parties was to include in the collective bargaining agreement an altogether futile provision, since if respondent's industry were covered by the decree its provisions would be applicable to it, irrespective of the agreement itself.

## VI

Respondent next argues that the petition to enforce the order of petitioner does not lie because it erred in believing the evidence of the workers and the medical certificates presented by them. Such contention is clearly frivolous. To determine the degree of credibility deserved by the witnesses of either party is an exclusive function of the Insular Board. By express provision of the Act governing the matter, this Court is not at liberty to disturb the findings of fact made by the Insular Board, unless they are not supported by the evidence. See § 9(2)(a) and (b) of the Labor Relations Act of Puerto Rico—Act No. 130 of 1945, as amended by Act No. 6 of March 7, 1946 (pp. 18, 40)—as well as *Rivera* v. *Labor Relations Board*, 70 P.R.R. 5, 8; *Rivera* v. *Labor Relations Board*, 70 P.R.R. 320, 328.

## VII

Nor is respondent correct in maintaining that the action in the instant case has prescribed, because the six-month period for filing complaints against unfair labor practices under the National Act has expired. The limitation period is clearly inapplicable to the case at bar, since the procedure followed was not in harmony with that Act but with the Puerto Rico Labor Relations Act which contains no limitation period for the filing of charges.

## VIII

Simmons International, Ltd. also contends that the Insular Board erred "in excluding the oral testimony of Lcdo. Hernán Pesquera which was aimed at establishing the true

intention of the parties in referring in the collective bargaining agreement to Mandatory Decree No. 16." Since respondent confines itself in its brief to stating this question without discussing it at all, we need not consider it. See *De Jesús* v. *Assad*, *supra*, and *Heirs of González* v. *Federal Land Bank*, *supra*.

## IX

■■■ The collective bargaining agreement provided in its Art. VI, § 2, that respondent's employees shall enjoy certain holidays with pay,[7] without being required to perform any work. The respondent insists that those days should be computed as part of the vacation with pay to which the employees were entitled under Mandatory Decree No. 16. We disagree. We fail to see how it can be said that the respondent allowed its employees those days "as vacation" when they are entitled to those days "by operation of law."[8] There is no question that the purpose of the provision included in Mandatory Decree No. 16, which we have said are applicable here by express provision of the collective bargaining agreement, was to allow the employees certain rest days in addition to legal holidays. To construe those provisions as contended by respondent would be clearly tantamount to defeating the provision contained in the collective bargaining agreement in this respect.

Lastly, respondent maintains that the Insular Board erred in concluding that the one week's vacation allowed its workers amounted only to five working days. This conclusion is supported by the evidence, it appearing from the

---

[7] "Article VI, § 2.—*Holidays With Pay*. No work shall be performed on the following holidays, and all persons who are employed with the company on those days will be paid eight hours at the regular rate, computed on the average salary earned in that particular week: New Year's, July 4, Labor Day, Columbus Day, Thanksgiving, Christmas. The hours thus allowed shall be computed as working hours for the purpose of computing the pay for extra hours."

[8] In Puerto Rico we have several acts fixing certain days as holidays expressly enumerated in those acts.

testimony of respondent's manager that its employees enjoyed only five days' vacation with pay. This being a finding of fact, this Court is without power to disturb it. Act No. 130, *supra*, § 9 (2) (*a*) and (*b*).

The petition of the Insular Board is granted and, consequently, judgment will be rendered enforcing its order of February 27, 1953.